## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JANE DOE, <br><br>            Plaintiff, <br><br>         -against- <br><br> SHAMSHOD KURBANOV, SANOAT MUMINOVA, and NYC ALL GLASS SYSTEM INC., <br><br>            Defendants. | C.A. No.: 26-cv-2595 <br><br> **Jury Trial Demanded** |

## AMENDED COMPLAINT

Plaintiff, Jane Doe ("Plaintiff"),[1] by and through her undersigned counsel, asserts this action against Defendants Shamshod Kurbanov ("Kurbanov"), Sanoat Muminova ("Muminova"), and NYC All Glass System Inc., (collectively, "Defendants"), and states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendants, who enslaved her, abused her, and trafficked her to the United States under false pretenses.

2. While Plaintiff was living in Tajikistan, she married Defendant Kurbanov in a religious ceremony and believed she would be joining him in the United States lawfully.

3. The marriage, however, was never legal and once Plaintiff arrived in the United States, Plaintiff became the victim of Kurbanov's verbal, emotional, physical, and sexual abuse.

4. Kurbanov called Plaintiff a slave and that's exactly how he and his relatives treated her.

---

[1] Plaintiff has filed a motion to proceed by pseudonym contemporaneously with this Complaint.

5.  Kurbanov forced Plaintiff to perform endless domestic chores in his home, where he lived with Defendant Muminova (Kurbanov's mother) and other relatives. Both Kurbanov and Muminova demanded that Plaintiff wake early to cook breakfast for at least eight people, clean the house, prepare meals, care for Kurbanov's children (including one with special needs), and prepare for Muminova's weekend parties.

6.  In addition to these onerous domestic demands, Kurbanov also forced Plaintiff to work at his businesses, Defendant NYC All Glass System Inc. four days a week. At the office, Plaintiff acted as Kurbanov's assistant and the office's bookkeeper.

7.  On information and belief, Kurbanov used other business entities to pay employees at NYC All Glass System Inc.

8.  Defendants' demands on Plaintiff were so extreme that she only slept a few hours a night.

9.  Defendants never paid Plaintiff for the work she performed at the office, nor was she paid for her domestic labor. She was totally dependent on Kurbanov, which he and Muminova exploited for their own benefit and gain.

10. Furthermore, Kurbanov emotionally, physically, and sexually abused Plaintiff. Kurbanov frequently hit or choked Plaintiff. He refused to take her to the hospital when she was in physical pain. On multiple occasions, Kurbanov locked Plaintiff in the office overnight without any food or heat.

11. Kurbanov also repeatedly raped Plaintiff, including when she was not fully conscious.

12. Kurbanov further threatened Plaintiff that if she called the police, she would be deported.

2

13.    Muminova condoned Kurbanov's abuse of Plaintiff.  Muminova also verbally and emotionally abused Plaintiff, accusing Plaintiff of being ungrateful and causing problems. Muminova also directed Kurbanov to lock Plaintiff in the office as punishment.

14.    Plaintiff eventually escaped and was able to contact the police with the help of her neighbors.  Kurbanov was convicted of assault against Plaintiff.

15.    As a result of Defendants' conduct, Plaintiff suffered multiple physical injuries, emotional harm, and psychological distress that continue to interfere with Plaintiff's daily life today.

## **PARTIES**

16.    Plaintiff Jane Doe is a citizen of Tajikistan and resides in Brooklyn, New York. She has resided in the State of New York since on or about September 20, 2023.

17.    Defendant Shamshod Kurbanov is, upon information and belief, a citizen of the United States and resides in Staten Island, New York.

18.    Defendant Sanoat Muminova is, upon information and belief, a citizen of the United States and resides in Staten Island, New York.

19.    Defendant NYC All Glass System Inc. is a New York corporation with its principal place of business in Brooklyn, New York.

## **JURISDICTION AND VENUE**

20.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.  In addition, this Court has jurisdiction under 18 U.S.C. §§ 1591 and 1595, which authorizes civil actions for violations of the trafficking provisions of the Victims of Trafficking and Violence Protection Act of 2000.  Further, this Court has jurisdiction over Plaintiff's claims under the Fair Labor Standards Act pursuant to 29 U.S.C. § 216(b).

21.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court has personal jurisdiction over Defendants.  Defendants reside within the District and all of the allegations arise of events within the District.

23.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the allegations arise out of events and actions that occurred within this District.

## FACTUAL ALLEGATIONS

**A.     Kurbanov's and Muminova's Trafficking of Plaintiff to the United States**

24.     Plaintiff previously lived in Tajikistan.

25.     In or about December 2022 or January 2023, Plaintiff was connected to Kurbanov, who lived in the United States, and began exchanging messages with him.

26.     In or about March or April 2023, Kurbanov's mother, Muminova, visited Tajikistan to meet Plaintiff's family.  Kurbanov then suggested that he and Plaintiff get married.

27.     On June 23, 2023, Plaintiff married Kurbanov in a religious wedding ceremony. Kurbanov selected the date and controlled the guests who could attend the wedding.

28.     Plaintiff and Kurbanov's marriage was never legal.  In fact, at the time of Plaintiff's religious wedding to Kurbanov, he was still legally married to his wife in the United States.

29.     When Kurbanov returned to the United States after the wedding, he became more controlling.  He demanded that Plaintiff wear a hijab, even though such garments are forbidden in Tajikistan.  Plaintiff complied because she wanted to please Kurbanov.  But because of strong cultural sentiment against hijabs in Tajikistan, Plaintiff had to quit her job.

30.     Kurbanov also began to isolate Plaintiff from her family in Tajikistan.  He demanded that Plaintiff join him in the United States and berated her when she wanted to discuss it with her parents.  Kurbanov enlisted his mother, Muminova, to scold Plaintiff for not wanting to

4

come to the United States to join Kurbanov. Under extreme pressure from Kurbanov and Muminova, Plaintiff ultimately agreed.

31. In August 2023, Plaintiff left Tajikistan and traveled to Turkey. Her travel to the United States was dangerous and harrowing. More than once, she called Kurbanov and begged him to buy her a ticket back to Tajikistan, but he refused and berated her into completing the trip. Muminova also criticized and dismissed Plaintiff, saying that Plaintiff was complaining.

**B.      Defendants' Forced Labor and Exploitation of Plaintiff**

32. About four to five weeks after leaving Tajikistan, Plaintiff finally arrived in the United States.

33. Plaintiff lived with Kurbanov and his family in a four-story house in Staten Island, New York. Plaintiff, Kurbanov, and his children from his previous marriages lived on the fourth floor. Muminova and Kurbanov's cousin lived on the third floor. Kurbanov's two brothers and their wives lived on the second floor. The first floor was occupied by an individual who was not related to Kurbanov and his family.

34. A week after living in Staten Island, Kurbanov told Plaintiff that a slave came – meaning that Plaintiff was the slave.

35. Kurbanov demanded that Plaintiff perform a deep cleaning of all three stories of the house where Kurbanov or his relatives resided. It took Plaintiff two to three weeks, cleaning day to night, because the house was extremely dirty.

36. After the initial deep cleaning, Plaintiff was forced to deep clean the third and fourth stories of the house on Thursdays. Plaintiff had to sweep all the floors manually with a broom because Kurbanov and his family refused to buy a vacuum. Plaintiff then wiped all the floors with a cloth using her hands. Plaintiff also wiped the kitchen cabinets. Even though there was a dishwasher, Plaintiff was not allowed to use it. Plaintiff cleaned the bathrooms, including the

5

windows, walls, and toilet, using a cloth.  Plaintiff also cleaned the windows and staircase in the house.  Plaintiff swept the leaves on the third-floor balcony.  In addition, Plaintiff had to do laundry, which was at least three loads per week.

37.    On Mondays, Tuesdays, Wednesdays, and Fridays, Plaintiff worked at Kurbanov's business, NYC All Glass System Inc.  Plaintiff woke up at 4 a.m., left the house with Kurbanov at 7 a.m., and arrived at the office at 8 a.m.  Plaintiff's responsibilities included reviewing emails Kurbanov received, reading, summarizing, and organizing materials into folders, and sending invoices and checks.

38.    Plaintiff did not have any breaks when she worked at the office.  Plaintiff also did not have any proper lunch when she worked at the office.

39.    After working at the office, Plaintiff went grocery shopping with Kurbanov.  When Plaintiff returned to the house, she had to help make dinner and clean the dishes.  Plaintiff went to bed very late each night, only to have to wake up at 4 a.m. the next day to do her domestic work and office work.

40.    Every day, including the days when Plaintiff went into Kurbanov's office to work, Plaintiff had to make breakfast for eight people, including Kurbanov and Muminova.

41.    On Sundays, Muminova hosted parties at the house until late at night.  Plaintiff had to cook for the parties, as well as do the dishes and clean after the parties until 2 a.m.  Plaintiff then had to wake up at 4 a.m. to cook breakfast before leaving for the office.

42.    On Mondays through Wednesdays, Plaintiff also took care of Kurbanov's children from his first wife, and on Fridays through Sundays, Plaintiff took care of Kurbanov's children from his second wife.  One of Kurbanov's children from his second wife had autism and it was

6

extremely difficult for Plaintiff to take care of him.  When Plaintiff could not prevent him from running outside, Kurbanov punished Plaintiff.

43.    Despite the extreme demands Kurbanov and Muminova placed on Plaintiff, Plaintiff was never paid for the work she performed at the office or for the domestic work performed for Kurbanov and his relatives.

**C.    Plaintiff Suffers Verbal, Emotional, Physical, and Sexual Abuse**

44.    Plaintiff joined Kurbanov in the United States in part because she wanted to have children.  Upon arriving in the United States, however, Kurbanov revealed that he did not want to have any children with Plaintiff.

45.    Muminova also emotionally manipulated Plaintiff.  Muminova complained that Plaintiff did not bring her adequate gifts.  Muminova repeatedly chastised Plaintiff as being a bad wife.

46.    Beginning in or about October 2023, shortly after her arrival, Kurbanov started to physically abuse Plaintiff.  Kurbanov often choked or hit Plaintiff.  Once or twice a month, Kurbanov both physically abused and sexually assaulted Plaintiff.

47.    Muminova was aware of Kurbanov's physical and sexual abuse of Plaintiff, as she was the first person that Plaintiff confided in regarding Kurbanov's sexual abuse.  Instead of helping Plaintiff, Muminova shamed Plaintiff for talking about her personal life.

Abuse in November 2023

48.    On November 21, 2023, Plaintiff and Kurbanov had an argument about having children.  After the argument, Muminova told Kurbanov to lock Plaintiff in the office.

49.    Kurbanov locked Plaintiff in his office overnight without providing any food or heat.  Terrified and unable to sleep, Plaintiff called her brother in Tajikistan who then called

Kurbanov to unlock the office.  Kurbanov misleadingly suggested to Plaintiff's brother that the office was comfortable and told him that Plaintiff was not mentally sound.

50.    Muminova joined Kurbanov in emotionally abusing Plaintiff.  Muminova accused Plaintiff of not being grateful and told her that Kurbanov had to take her to a bad place to teach her a lesson.

Abuse in January 2024

51.    On Plaintiff's birthday, Kurbanov began the day by verbally abusing her and demanding that she work.  Kurbanov pushed Plaintiffs' breakfast plate away from her, told her she was not grateful, blocked her from speaking to her family, and ordered her to go clean the kitchen and take care of his children.

52.    Later that day, Kurbanov smashed Plaintiff's coffee on the floor, causing it to spill all over the floor.  Kurbanov said to Plaintiff, "clean it, slave," and left.  When Plaintiff started to cry, Muminova came to see what happened and told Plaintiff that she needed to do what Kurbanov told her to do.  Plaintiff cleaned the floor.

53.    Later that night, as Plaintiff was trying to fall asleep, Kurbanov told Plaintiff that he did not love her.  Plaintiff got up and told Kurbanov that if he did not love her then there was no reason to live together and asked for a divorce.

54.    Kurbanov became angry and choked Plaintiff with his arm, causing Plaintiff to lose consciousness.  When Plaintiff woke up and fell down, Kurbanov dragged Plaintiff by her hair to the bathroom, blaming her that she woke his mother up.  Kurbanov pinned Plaintiff against the wall in the bathroom and took a pair of scissors out.  Plaintiff was terrified and begged Kurbanov to put the scissors down.  Kurbanov then tried to write "you're a bitch" on the mirror.  Plaintiff ran from the bathroom to the closet, but Kurbanov caught her in the closet.  Kurbanov forced Plaintiff

to look at the mirror in front of the closet and forced her to say, "I'm a bitch."  When Plaintiff refused, Kurbanov told Plaintiff three times that she is a bitch.

55.     Plaintiff then ran away from Kurbanov to the bedroom, but he caught her and threw her on the bed.  Kurbanov eventually fell asleep, but Plaintiff was unable to fall asleep because of her fear that Kurbanov would wake up and kill her.

Abuse in February 2024 and Denial of Medical Care

56.     In February 2024, Plaintiff and Kurbanov got into another argument.  Plaintiff told Kurbanov that she was going to sleep in the living room.  Kurbanov said, "where is this prostitute," and came to the second floor to find Plaintiff.

57.     Kurbanov then hit Plaintiff on her chest and caused her to fall.  Plaintiff laid on the floor, unable to move or breathe for approximately two to five minutes.

58.     Muminova came over and blamed Plaintiff, telling Plaintiff that she is not a good wife and that she argues with Kurbanov too much.

59.     Plaintiff started to feel worse and was having trouble breathing.  Plaintiff's sister-in-law took Plaintiff's phone because she did not want Plaintiff to call 911.  When Kurbanov returned, Plaintiff asked to see a doctor but Kurbanov initially refused.

60.     An hour later, Plaintiff continued to have trouble breathing.  Kurbanov eventually agreed to take Plaintiff to the emergency room, but on the way to the hospital he told her that she was causing him problems because the emergency room staff would likely know that he hit her. Out of fear, Plaintiff promised Kurbanov that she would not blame him for her injuries.

61.     Kurbanov then changed course and took Plaintiff to a pharmacy instead.  She did not see a doctor that evening.

9

62. The next day, Plaintiff felt worse and started to vomit. Kurbanov confiscated Plaintiff's phone to prevent her from calling 911 or looking up nearby hospitals. Kurbanov refused to provide Plaintiff with an address for a hospital.

63. While Kurbanov eventually agreed to take Plaintiff to the emergency room, he threatened her before doing so. He told Plaintiff that if she accused him of hitting her, he would accuse her of abusing his children.

64. At the emergency room, Plaintiff lost consciousness. When the staff asked Plaintiff what happened to her, Plaintiff responded that she fell down.

Further Abuse in February 2024 and Attempted Suicide

65. On or about February 21, 2024, while deep cleaning the house, Plaintiff told Kurbanov that she was tired and wanted to leave.

66. When Plaintiff packed her belongings and tried to leave, Kurbanov forced Plaintiff into his car. While driving, Kurbanov screamed that Plaintiff is a widow and threatened to call Plaintiff's brother to give Plaintiff a talaq, which means divorce in Islam.

67. Kurbanov became violent and pulled Plaintiff's leg, trying to break her leg. Plaintiff felt sick and vomited outside the car. Kurbanov then locked Plaintiff in the office again.

68. Later that night, while Plaintiff was weak and crying, Kurbanov entered the office and raped Plaintiff. Despite Plaintiff screaming and begging Kurbanov to stop, he did not. Kurbanov later called Plaintiff and said, "You were proud to be a pure woman? I already gave you talaq before touching you. Now you are dirty."

69. Plaintiff felt that her life was finished. Plaintiff left the office and walked into traffic to attempt to commit suicide.

70.    She was brought to the hospital, where she was examined.  The staff noted that Plaintiff had been to the hospital with injuries and bruises before.  After being released from the hospital, Plaintiff could not return to Kurbanov's home and so was forced to sleep in the office.

71.    On February 23, 2024, Kurbanov manipulated Plaintiff into believing that he had bought her a plane ticket to Tennessee, where another Tajik woman lived.  Plaintiff packed all of her belongings and Kurbanov took her to the airport, but arrived too late for Plaintiff to board the flight.  Kurbanov then left Plaintiff at the airport alone.  Though she was devastated, Plaintiff had no choice but to leave the airport.  She had no money to buy a ticket herself.

72.    On February 24, 2024, Plaintiff posted a message in a Tajik community asking for help.  A woman responded, came to the office to pick Plaintiff up, and took Plaintiff to her apartment.  Once Kurbanov found out, he called Plaintiff and repeatedly sent a voice message threatening to post Plaintiff's private photographs publicly.  Kurbanov further threatened Plaintiff that her father and brother would be humiliated upon seeing the photographs.

73.    On February 29, 2024, Plaintiff traveled to Pittsburgh with a plane ticket that her friend bought for her.  While Plaintiff was in Pittsburgh, Kurbanov continued to send threatening voice messages to Plaintiff.

74.    Plaintiff sent Kurbanov's threats to his relative and asked for help.  However, instead of helping Plaintiff, Kurbanov's relative lied to her by telling her that Kurbanov promised to have children with Plaintiff if she returned.  Because Plaintiff wanted to have children of her own so badly, she agreed to return.

<u>Abuse in March 2024</u>

75.    Plaintiff returned to New York in March 2024.  Kurbanov picked Plaintiff up from the airport and forced her to sleep in the office that evening.

11

76.     The next day, Plaintiff told Kurbanov that she would not sleep in the office again. Kurbanov became enraged, leading to a physical struggle.  He locked Plaintiff inside the office again and threatened her.

77.     Kurbanov started slapping Plaintiff repeatedly in the face and hit her stomach. Plaintiff fell to the floor but Kurbanov continued to hit Plaintiff repeatedly.  Kurbanov threw all of Plaintiff's books, including her religious books, around the office.

78.     Kurbanov told Plaintiff that he would take her home when she calmed down. However, when Plaintiff stopped shaking, Kurbanov locked the door again.  Plaintiff panicked and ran to the door, screaming for Kurbanov to open the door.  Kurbanov grabbed Plaintiff's neck, pushed her hard against the wall, and hit her chest.  After Plaintiff fell between the doors, Kurbanov dragged Plaintiff by her shoulders and threw her into his car.

79.     When Plaintiff woke up, she was in bed at Kurbanov's house.  Even though Plaintiff was not fully conscious, Kurbanov raped her and said, "I need to take some benefits from you."

Abuse in April 2024

80.     In or about March or April 2024, Plaintiff found out that Kurbanov had been talking to another woman and asking for naked photographs. Muminova blamed Plaintiff, saying it was Plaintiff's fault.

81.     Plaintiff attempted to leave Kurbanov, but he came after her and stepped hard on her foot, injuring her.

82.     When Plaintiff told Kurbanov that she would call the police, Kurbanov responded that calling the police would be a problem for Plaintiff and not Kurbanov because he is a U.S. citizen and she is not.  Kurbanov threatened Plaintiff that the police would protect him over her because she was seeking asylum.  Kurbanov told Plaintiff that she had no one to protect her but

that he had money and would find a good lawyer. Kurbanov further threatened that Plaintiff could be deported.

83. The next day, Kurbanov left for Dubai. When Kurbanov returned from his trip, he physically and sexually abused Plaintiff.

84. Plaintiff eventually escaped to her neighbors who took her to the police department, where she reported Kurbanov's physical abuse.

85. Kurbanov was ultimately convicted of Assault in the Second Degree and sentenced to 5 years of probation.

**D.     Kurbanov's and Muminova's Isolation of Plaintiff**

86. Plaintiff's family resided, and continues to reside, in Tajikistan. Once Plaintiff came to the United States to join Kurbanov, she was physically separated from her family.

87. Plaintiff's phone was her only connection to her family in Tajikistan. Muminova restricted Plaintiff to one thirty-minute phone call with her family each week, telling Plaintiff that Kurbanov does not like Plaintiff talking to her family.

88. On several occasions, Kurbanov became so enraged that he broke Plaintiff's phone, severing her only connection to her family. Kurbanov broke Plaintiff's phone five times.

89. While Kurbanov would eventually replace the broken phone, Plaintiff was totally dependent on him to do so because she lacked her own money. Once, Plaintiff was without a phone for approximately one to two weeks. Kurbanov thus used access to a phone as a means to further control and coerce Plaintiff.

90. When Kurbanov broke Plaintiff's phone the first time, Plaintiff told Muminova about what he had done. Muminova simply said that Plaintiff did not need to talk to her family.

91. Kurbanov also prevented Plaintiff from talking to her friends, further isolating her.

**E.     Long-Term Harm Suffered by Plaintiff**

92. As a result of Defendants' actions, Plaintiff has suffered emotional and psychological pain.

93. Plaintiff struggles emotionally and psychologically due to her experience with Defendants. Plaintiff finds it difficult to interact with a lot of people on a daily basis, which interferes with her work.

94. Plaintiff feels alone and that she does not have a future. In her community, she cannot easily marry because of her past with Kurbanov. She also cannot return to her family back in Tajikistan due to the shame and abuse she suffered at Defendants' hands.

95. As a result of the emotional and psychological harm she suffered, Plaintiff sought psychological support by seeing a therapist and a neurologist. Plaintiff initially saw her therapist three to four times a week. Plaintiff continues to see her therapist twice a week to cope with her struggles. Additionally, a non-profit organization with a mission to uplift survivors of domestic violence in South Asian communities has recently advised Plaintiff to receive its counseling service because of Plaintiff's emotional pain from Kurbanov's sexual abuse.

96. Plaintiff also continues to have pain from the injuries that Defendant Kurbanov inflicted on her, requiring her to visit a physical therapist each week.

### FIRST CLAIM FOR RELIEF
**Involuntary Servitude in Violation of 18 U.S.C. §§ 1584, 1595**
(All Defendants)

97. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

98. Defendants knowingly and willfully held Plaintiff in involuntary servitude, in violation of 18 U.S.C. § 1584.

99. Plaintiff is authorized to bring this claim against Defendants under 18 U.S.C. § 1595, which provides for a civil cause of action.

100. Defendants knowingly and willfully forced Plaintiff to perform domestic labor and work at Kurbanov's business, forcing her to work long hours against her will and without payment.

101. Defendants coerced Plaintiff into doing so through physical abuse, confinement, violence, force, threats of psychological and legal coercion, and threats of physical harm.

102. Defendants' scheme and associated actions caused Plaintiffs injuries and damages.

**SECOND CLAIM FOR RELIEF**
**Forced Labor in Violation of 18 U.S.C. §§ 1589, 1595**
(All Defendants)

103. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104. Defendants knowingly obtained Plaintiff's labor or services by means of force, threat of force, means of serious harm, threats of serious harm, means of abuse, or threatened abuse of law or legal process, and a scheme, plan, or pattern intended to cause Plaintiff to believe that she or another person would suffer serious harm in violation of 18 U.S.C. § 1589(a).

105. Defendants threatened Plaintiff with harm and actually did harm her. Plaintiff suffered from Defendants' physical abuse, sexual abuse, verbal abuse, and repeated threats.

106. Defendants also threatened her with abuse of legal process by causing Plaintiff to believe that she would be deported if she reported Kurbanov's abuse of her.

107. Defendants did not pay Plaintiff for any of the labor they forced her to perform.

108. Defendants knowingly benefitted financially and/or by receiving anything of value by harboring and/or maintaining Plaintiff in violation of 18 U.S.C. §1589(a)(2).

109. Plaintiff is authorized to bring this claim against Defendants under 18 U.S.C. § 1595, which provides for a civil cause of action.

110. Defendants' scheme and associated actions caused Plaintiff injuries and damages.

15

### THIRD CLAIM FOR RELIEF
**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. §§ 1590, 1595**
(All Defendants)

111. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

112. By bringing Plaintiff into the United States and forcing her to work without pay, Defendants knowingly recruited, harbored, transported, provided, and/or obtained Plaintiff for labor and involuntary servitude in violation of 18 U.S.C. § 1590.

113. Plaintiff is authorized to bring this claim against Defendants under 18 U.S.C. § 1595, which provides for a civil cause of action.

114. Defendants' scheme and associated actions caused Plaintiffs injuries and damages.

### FOURTH CLAIM FOR RELIEF
**Conspiracy in Violation of 18 U.S.C. § 1594 and Civil Conspiracy in Violation of Common Law**
(All Defendants)

115. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

116. Defendants had an agreement to accomplish human trafficking or to benefit financially from Plaintiff's services through unlawful means.

117. Defendants conspired to compel Plaintiff to work against her will for their benefit, by the use of force, the threat of force, or the threat of legal coercion.

118. Muminova and Kurbanov worked in concert to persuade Plaintiff to come to the United States by entering into a religious marriage with Kurbanov. However, Kurbanov and Muminova knew that once Plaintiff arrived, they would force her to perform onerous domestic labor and office work without any pay or compensation.

119.    Plaintiff is authorized to bring this claim against Defendants under 18 U.S.C. § 1595, which provides for a civil cause of action.

120.    Defendants' actions resulted in severe emotional and physical distress to Plaintiff.

**FIFTH CLAIM FOR RELIEF**
**Unpaid Federal Minimum Wages in Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.***
(All Defendants)

121.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

122.    Defendants employed Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 203(d)-(e).  Plaintiff was employed by Defendants Kurbanov and Muminova for domestic labor and was employed by Defendant NYC All Glass System Inc. to perform administrative work.

123.    Defendants willfully failed to pay Plaintiff federal minimum wages, in violation of 29 U.S.C. § 206(a).

124.    Defendants' willful violation of the Fair Labor Standards Act entitles Plaintiff to recovery of her unpaid minimum wages, an equal amount as liquidated damages and reasonable attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**Unpaid State Minimum Wages and Overtime Wages in Violation of New York Labor Law, N.Y. Lab. Law §§ 650 *et seq.***
(All Defendants)

125.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.    Defendants employed Plaintiff within the meaning of New York Labor Law. Plaintiff was employed by Defendants Kurbanov and Muminova for domestic labor and was employed by Defendant NYC All Glass System Inc. to perform administrative work.

17

127.    Defendants willfully failed to pay Plaintiff state minimum wages, in violation of New York Labor Law.

128.    Defendants willfully failed to pay Plaintiff overtime wages, in violation of New York Labor Law.

129.    Defendants did not have a good faith basis to believe that their failure to pay Plaintiff minimum wages and overtime wages was in compliance with the law.

130.    Defendants' willful violation of New York Labor Law entitles Plaintiff to recovery of her unpaid minimum wages and overtime wages, liquidated damages, and reasonable attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
### Spread of Hours Pay in Violation of New York Labor Law, N.Y. Lab. Law § 195
(Defendants Kurbanov and Muminova)

131.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

132.    Defendants Kurbanov and Muminova employed Plaintiff within the meaning of New York Labor Law.

133.    Defendants willfully failed to pay Plaintiff additional compensation of one-hour's pay at the basic minimum hourly wage rate for each day during which she worked a spread of hours of more than ten (10) hours, in violation of New York Labor Law.

134.    Defendants' willful failure to pay Plaintiff spread-of-hours pay entitles Plaintiff to recovery of the amount prescribed by statute, liquidated damages, and reasonable attorney's fees and costs.

## EIGHTH CLAIM FOR RELIEF
### Unjust Enrichment
(All Defendants)

135.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

136.    Plaintiff rendered services as a live-in domestic servant and as Kurbanov's assistant and the office's bookkeeper to Defendants.

137.    Defendants accepted these services and in turn failed to compensate Plaintiff for the fair market value of her services.

138.    Defendants have been unjustly enriched at Plaintiff's expense.

139.    It would be inequitable for Defendants to be permitted to retain such benefits without paying Plaintiff the value of the benefits conferred.  Equity and good conscience require restitution.

140.    Plaintiff is therefore entitled to recover damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

1)  awarding Plaintiff compensatory damages in an amount to be proven at trial;

2)  awarding Plaintiff punitive damages in an amount to be proven at trial;

3)  awarding Plaintiff her actual expenses of litigation, including attorneys' fees; and

4)  granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  May 1, 2026

Respectfully submitted,

*/s/ May Chiang*

**DECHERT LLP**
May Chiang
Yeo Eun Yoon (*pro hac vice motion forthcoming*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
may.chiang@dechert.com
kayla.yoon@dechert.com

*Counsel for Plaintiff Jane Doe*